**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3564
_____

LUIS VEGA,
                              Appellant

v.

GEORGE RIPLEY, individually and in his official capacity
as a police officer for York City Police Department;
CITY OF YORK; CITY OF YORK POLICE DEPARTMENT;
JOHN DOES 1-10
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 1-11-cv-02015)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
June 13, 2014
_____

Before: AMBRO and BARRY, Circuit Judges and
RESTANI,[*] Judge

(Opinion Filed: July 3, 2014)
_____

OPINION
_____

BARRY, Circuit Judge

_____

[*]  The Honorable Jane A. Restani, Judge of the United States Court of International
Trade, sitting by designation.

In 2009, Luis Vega was arrested and charged with aggravated assault and carrying a firearm without a license in violation of Pennsylvania law, but the charges were later withdrawn after another man was identified as the perpetrator. Vega filed this action pursuant to 42 U.S.C. § 1983 against Detective George Ripley of the York Police Department, alleging malicious prosecution. The District Court granted Ripley's motion for summary judgment, holding that Ripley was entitled to qualified immunity and that, in any event, Vega failed to set forth sufficient evidence to establish the elements of a malicious prosecution claim. We will affirm.

I.

On September 30, 2009, Clarence Collier was shot as he entered his apartment in York, Pennsylvania. Detective Ripley was assigned to investigate the shooting. In connection with the investigation, Ripley received reports from eyewitnesses that described the shooter as a light-skinned black or biracial man, and received information that an informant had reported to law enforcement that she heard that Vega was bragging about having shot someone. The informant had previously provided information to the police that led to drug seizures, arrests, and convictions, and provided facts about Vega that were verified by Ripley.[1]

Based on this information, Ripley created a photo array of six individuals, including Vega, using photos taken from the Pennsylvania Department of Transportation

---

[1] Ripley also testified in his deposition that Collier's girlfriend, Maribel Baez, told him that Collier told her at the hospital that a boy named Luis was the shooter and that Luis had a sister in Columbia, Pennsylvania; Ripley confirmed that Vega had a sister in Columbia. Because this did not appear in Ripley's report, Vega takes issue with it.

2

database. Vega's photo was in the position numbered "2," and the background was noticeably lighter than the background of the other five photos. Vega's photo also differed from the others in that it depicted him with facial hair.[2] Ripley showed the photo array to Collier at the hospital, and Collier, paralyzed from the neck down as a result of the shooting, identified Vega as the shooter.

Although Ripley did not immediately arrest Vega, he interviewed him on December 7, 2009, when Vega was brought to the police station on another incident. At the interview, Vega denied involvement in the Collier shooting. Ripley nevertheless obtained an arrest warrant, and Vega was taken into custody and charged with aggravated assault and carrying a firearm without a license. He was in custody for approximately two months before being released on bail. Months later, while investigating a homicide, Ripley became aware of information that led him to believe that another man had shot Collier. The charges against Vega were withdrawn in June of 2010.

In October 2011, Vega filed this action against Ripley, the City of York, and the City of York Police Department, alleging claims of malicious prosecution and municipal liability. Defendants moved for summary judgment. Vega did not challenge defendants' motion with respect to municipal liability, but challenged only Ripley's motion for summary judgment with respect to the claim for malicious prosecution. The Magistrate

---

[2] Viewing the facts in the light most favorable to Vega, as we must, we will accept for purposes of our analysis (as did the Magistrate Judge) that he was the only individual depicted with facial hair. We cannot ignore, however, that not only is Vega's facial hair sparse and not prominent in his photo, but at least one other individual depicted in the photo array also appears to have facial hair.

Judge issued a Report and Recommendation ("R&R") recommending that defendants' motion be granted. The R&R concluded that Ripley was entitled to qualified immunity because a reasonable officer in Ripley's situation, aware of the same facts and circumstances, would have had probable cause to arrest Vega based on the identification by Collier, and because Vega failed to set forth sufficient evidence to establish the elements of a prima facie case of malicious prosecution. The District Court adopted the R&R and entered judgment in favor of defendants on July 29, 2013.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review of the District Court's grant of summary judgment and the legal issues underpinning a claim of qualified immunity." Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). Summary judgment is appropriate where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the District Court's decision, we "must view the evidence in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the evidence." Halsey, 750 F.3d at 287.

The doctrine of qualified immunity provides that "government officials are shielded from civil liability for conduct that does not violate clearly established constitutional or statutory rights of which a reasonable person would have known." Carman v. Carroll, 749 F.3d 192, 199 (3d Cir. 2014). To establish malicious prosecution

4

in violation of the Fourth Amendment, for purposes of § 1983, a plaintiff must establish: (1) that the defendant initiated a criminal proceeding, (2) that the criminal proceeding ended in the plaintiff's favor, (3) that the defendant initiated the proceeding without probable cause, (4) that the defendant acted "maliciously or for a purpose other than bringing the plaintiff to justice," and (5) that the plaintiff suffered a deprivation of liberty as a result of the proceeding. Halsey, 750 F.3d at 296-97 (quoting Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007)).

The District Court correctly concluded that qualified immunity shielded Ripley from liability and that Vega could not establish the requisite elements of a malicious prosecution claim because Ripley had probable cause to arrest Vega for the shooting of Collier. We have held that "a positive identification by a victim witness, without more," is ordinarily sufficient to establish probable cause, absent other factors such as, for example, "[i]ndependent exculpatory evidence" or "substantial evidence of the witness's own unreliability." Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000). There was no reason for Ripley to doubt Collier's identification of Vega. Although Collier was hospitalized with serious injuries at the time he made the identification, there is no evidence to suggest that the identification was unreliable due to Collier's physical or mental condition. In addition to the photo identification, Ripley also had information from a reliable informant inculpating Vega.

The slight differences between Vega's photo and the other photos in the array do not alter our conclusion with respect to probable cause. While Vega argues that the array

5

was unnecessarily suggestive and created a substantial risk of misidentification in violation of his rights, see United States v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003), we do not agree. The only noticeable difference between Vega's photo and the other photos is the color of background, which did not render the array unnecessarily suggestive. See, e.g., id. at 115-16 (holding that no due process violation occurred where defendant's photo was the only one in the array that was not a mug shot and thus differed in coloring and shading and depicted him smiling, bare-chested, and wearing jewelry, in contrast to the other photos). None of the witnesses identified the shooter by reference to his facial hair, nor was Vega's facial hair in his photo prominent; indeed, the presence of facial hair in Vega's photo was not even marginally suggestive, much less did it create a risk of misidentification.

Finally, Vega argues that Ripley's affidavit in support of the arrest warrant contained material omissions. He argues that Ripley should have included the fact that the identification took place while Collier was "in a medically induced and injury caused disoriented, at the very least, if not incapacitating mental state," (see Appellant's Br. at 20), and the fact that the bullet casings found at the scene did not match the caliber of weapons owned by Vega.

A Fourth Amendment violation may occur where an affidavit in support of an arrest warrant contains material omissions made with reckless disregard for the truth and where a corrected affidavit would have lacked probable cause. See Wilson, 212 F.3d at 786. Omissions from a warrant application "are made with reckless disregard if an

6

officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" Id. at 788 (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)). The affidavit stated that Collier was "admitted to York Hospital for a gunshot wound and is paralyzed from the neck down." (App. at 52.) There is utterly no evidence that Collier was disoriented or incapacitated at the time he made the identification. Moreover, even if the evidence that the bullet casings found at the scene did not match the caliber of weapons owned by Vega was exculpatory, and that is open to dispute, it would not have been "strong enough to undermine a finding of probable cause" when weighed against the evidence that inculpated him. See Wilson, 212 F.3d at 791-92. Thus, the District Court did not err in adopting the finding of the Magistrate Judge that no reasonable jury could conclude that probable cause to arrest Vega was lacking.

Because no reasonable jury could conclude that Ripley lacked probable cause to arrest Vega, Ripley is entitled to qualified immunity and Vega cannot establish a prima facie case of malicious prosecution. We, therefore, need not address whether Vega set forth sufficient evidence of the remaining elements of a malicious prosecution claim.

III.

We will affirm the order of the District Court.

7